## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

EVYLYN LANSING and
GUY BREWER,

                    Plaintiffs,

v.                                              CIVIL ACTION NO.   5:12-cv-00676

ALLSTATE INSURANCE COMPANY and
RICHMOND INSURANCE CENTER, INC.,

                    Defendants.


### MEMORANDUM OPINION AND ORDER

The Court has reviewed *Plaintiffs' Motion to Remand Pursuant to 28 U.S.C. § 1447* (Document 12) and the *Motion to Dismiss Richmond Insurance Center, Inc.* (Document 3).   After careful consideration of the supporting memoranda and all written submissions relative thereto, the Court denies Plaintiff's motion to remand and grants Defendant Richmond's motion to dismiss.

### I.

In early 2012, Plaintiffs Evelyn Lansing and Guy Brewer filed this action in the Circuit Court of Raleigh County, West Virginia, against Defendants Allstate Insurance Company ("Allstate") and Richmond Insurance Center, Inc. ("Richmond"). Ms. Lansing is a resident of Raleigh County, West Virginia, whereas Mr. Brewer allegedly resides in both Raleigh County and Florida. (Compl. ¶¶ 1, 2.) Ms. Lansing owns a home ("the Property") at 338 Chestnut Street,

Mabscott, Raleigh County, West Virginia, which was burned on May 22, 2011. (Compl. ¶¶ 3, 6-2.)[1] Mr. Brewer previously owned the Property but subsequently transferred the Property to his daughter, Ms. Lansing, in 2006. (Compl. ¶ 4.) Allstate is incorporated outside the State of West Virginia, and has its principal place of business in Northbrook, Illinois. (Document 1 ¶ 4b.) Richmond is incorporated in West Virginia. (Document 1 ¶ 4c.)

Plaintiffs allege the Property was covered by an insurance policy with Allstate at all times relevant to the Complaint. (Compl. ¶ 5.)   Plaintiffs further allege Richmond "is the duly appointed agent of Allstate and was the Plaintiffs (sic) local insurance agent at all times relevant" to the Complaint. (Compl. ¶ 6.)   Plaintiffs claim Mr. Brewer had an insurance policy on the Property with Allstate which was sold to him by Richmond. (Compl. ¶5-1.)   Although Plaintiffs timely filed a claim for benefits pursuant to the Allstate policy, Plaintiffs allege their claim was denied by a letter dated November 9, 2011. (Compl. ¶¶ 7-8.)   Plaintiffs allege the Defendants' denial of a fire loss claim breached the Allstate policy. (Compl. ¶ 9.)   Further, Plaintiffs claim the Defendant's denial "constitute[d] bad faith[;]" and was "a malicious, intentional attempt to deny the Plaintiffs benefits entitled to them under the Allstate policy." (Compl. ¶¶ 10, 11.)   Plaintiffs specifically allege "Richmond breached its duty as the insurance agent of the Plaintiffs by failing to update their policy to reflect the change in ownership (despite being told of the same) and by failing to otherwise meet its obligation as an insurance agent for the Plaintiffs." (Compl. ¶ 12.) Plaintiffs paid all of the Policy premiums up until the date of the fire. (Document 15 at 5 n. 3.) However, after the fire, Allstate refunded all premiums paid after the time Mr. Brewer transferred the Property to Ms. Lansing. (*Id.*)

---

[1] In the Complaint, Plaintiffs have labeled two paragraphs as "5" and two paragraphs as "6." The Court refers to what should be the seventh and eighth paragraphs as "5-2" and "6-2."

On March 9, 2012, Defendants timely removed this action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.   Defendants assert jurisdiction is proper in this Court under 28 U.S.C. § 1332 based on complete diversity of citizenship with an amount in controversy that exceeds $75,000. (Document 1 ¶4.)   Clearly, complete diversity does not exist on the face of Plaintiffs' Complaint.   However, Defendants argue Richmond was fraudulently joined "insomuch as there are no actionable claims stated against it; there is no intention on the part of Plaintiff to obtain a joint judgment against [Richmond]; and there is no colorable claim against [Richmond] since the allegations fail to state a claim upon which relief may be granted." (Document 1 ¶ 4c.) On March 12, 2012, Richmond filed its motion to dismiss (Document 3).   Plaintiffs timely filed their motion to remand on March 27, 2012 (Document 12), which Defendants responded to on April 9, 2012. Plaintiffs filed no reply.

## II.

### A.  *Fraudulent Joinder Standard*

This Court has original jurisdiction over all civil actions between citizens of different states where the matter in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a)(1) (2006). Generally, every defendant must be a citizen of a state different from every plaintiff for complete jurisdiction to exist. However, the Court can disregard the citizenship of a party that is "fraudulently joined" when determining if complete diversity exists.   *Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232-233 (4th Cir. 1993).   The fraudulent joinder doctrine "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain non-diverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).   In order to show a

non-diverse party has been fraudulently joined "the removing party must establish either: [t]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Id*. at 464.   Moreover, the party that asserts fraudulent joinder "bears a heavy burden-it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 424 (4th Cir. 1999). Plaintiffs need only have a "slight possibility of a right to relief" against a non-diverse defendant for jurisdiction to be improper in federal court. *Id.* at 426.   If a court "identifies [a] glimmer of hope for the plaintiff[s' claim], [then] the jurisdictional inquiry ends." *Id.*   Lastly, the fraudulent joinder standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Mayes,* 198 F.3d at 464.

### B.  Analysis

Plaintiffs argue removal was improper because the Defendants acknowledge there is not diversity of citizenship and they did not meet their heavy burden in claiming fraudulent joinder. (Document 13 at 2.) Plaintiffs observe that generally "a duly licensed insurance agent acting within the scope of their employment may not be sued in their individual capacity." (*Id*.) (citing *Fleming v. United Teachers Associates Ins. Co.*, 250 F. Supp. 2d 658, 662 (S.D.W. Va. 2003)). Nevertheless, Plaintiffs argue there is authority to support liability for insurances agents under several circumstances.   First, Plaintiffs argue West Virginia recognizes a private cause of action against employees of insurance companies who violate the West Virginia Unfair Trade Practices Act ("WVUTPA"), W. Va. Code §§ 33-11-1 to -10. (*Id*.)(citing *Taylor v. Nationwide Mut. Ins. Co*., 214 W. Va. 324 (2003)). Next, Plaintiffs argue the "doctrine of reasonable expectations"

4

provides a cause of action against Richmond. (*Id*. at 2-3)(citing *Lawson v. Am. Gen. Assur. Co.*, 455 F. Supp. 2d 526 (S.D. W.Va. 2006)).   Plaintiffs contend "[t]his case is analogous to *Lawson* and therefore, [should] be remanded." (*Id*. at 3.)   Finally, Plaintiffs argue "an insurance agent may have a duty to advise an insured of its coverage needs if (1) a special relationship exists, (2) the agent holds itself out as a specialist, and (3) whether the agent misrepresents the scope and nature of insured's coverage." (*Id*.)(citing *Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C. v. XL Specialty Ins. Co.*, 261 F. Supp. 2d 546 (S.D. W.Va. 2003)). Plaintiffs contend a special relationship existed because Mr. Brewer was a longtime Richmond customer and it "had to believe its expertise would be relied upon as to his insurance needs, and, [he] likewise reasonably relied upon them to change his policy to extend coverage to his daughter." (Document 13 at 3.)   In sum, Plaintiffs argue Defendants failed to meet their heavy burden to prove fraudulent joinder.

In response, Defendants argue all the actionable allegations in the Complaint are alleged against Allstate. "Plaintiffs' Complaint referred to 'Defendants,' plural, and 'Defendant,' singular, in alleging that the denial of a fire loss claim breached the homeowners policy issued to Guy Brewer (the Policy); 'constitute[d] bad faith[;]' and was 'a malicious, intentional attempt to deny the Plaintiffs benefits entitled to them under the Allstate policy.'" (Document 15 at 1-2)(citing Compl. ¶¶ 9-11.) With respect to Richmond, Defendants argue Plaintiffs only alleged Richmond breached its duty as an insurance agent when it failed to update the Policy to reflect the change in ownership and when it failed to meets its obligations as Plaintiffs' insurance agent. (*Id*. at 2)(citing Compl. ¶ 12.)

Defendants argue that Plaintiffs do not dispute Allstate alone issued the Policy and handled the denial of the claim. (*Id*. at 2.)   Also, Defendants contend it is undisputed that Richmond

5

played no role in the handling of the fire loss claim and that Mr. Brewer was the only named insured under the Policy. (*Id*.) Defendants agree with Plaintiffs' acknowledgement that insurance sales agents cannot normally be held liable in an agent capacity, but distinguish the cases relied on by Plaintiffs in support of a claim against Richmond. First, unlike *Taylor*, Plaintiffs do not allege Richmond violated the WVUTPA. Second, the "doctrine of reasonable expectations" ordinarily arises from a contract. Defendants contend *Lawson* is inapplicable because "[i]t is undisputed that Richmond was not a party to the Policy [and] Plaintiffs alleged no act of Richmond that affirmatively created an expectation of Policy coverage after Mr. Brewer transferred title to [the Property]." (Document 15 at 4.)   Defendants contend such an assertion would be irrational because Mr. Brewer was the only person insured by the Policy and there was no basis for him to believe the Policy was transferred when his daughter took ownership the Property. (*Id*.)  Third, Defendants argue *Hill* is inapplicable because "Plaintiffs did not allege a special relationship between Mr. Brewer and Richmond, [any] particular advice by Richmond to Mr. Brewer, or a misrepresentation by Richmond of 'the scope or nature of' the Policy's coverage." (*Id*. at 5.) Finally, Defendants contend Plaintiffs' argument that Mr. Brewer was Richmond's longtime customer and that it had to believe its expertise would be reasonably relied upon by Mr. Brewer does not save Plaintiffs' failure to allege such facts in their Complaint. (*Id*.)  Alternatively, Defendants argue that even if Plaintiffs had alleged such facts, the assertion of what "Richmond had to believe" is too speculative to support a valid claim against Richmond. (*Id*.)

As discussed *supra*, the Court must decide if there is a possibility that Plaintiffs can establish a cause of action against the allegedly fraudulently joined party and whether a "glimmer of hope" exists for Plaintiffs' claim against Richmond. On a motion to remand, "all legal

6

uncertainties are to be resolved in the plaintiff's favor." *Hartley*, 187 F.3d at 425.   Insurance sales agents, like Richmond, cannot normally be held liable in their capacity as an agent of an insurance company, *Fleming,* 250 F. Supp.2d at 662, but various courts have recognized exceptions to this rule. However, Plaintiffs fail to allege any facts to support a claim under any of the exceptions. Plaintiffs only allege "Richmond breached its duty as the insurance agent of the Plaintiffs by failing to update their policy to reflect the change in ownership (despite being told of the same) and by failing to otherwise meet its obligation as an insurance agent for the Plaintiffs." (Compl. ¶ 12.) T*aylor* is completely irrelevant to the instant case because Plaintiffs do not allege violations under the WVUTPA. Therefore, this argument does not defeat fraudulent joinder.

Plaintiffs fail to allege any facts to support a claim under the "doctrine of reasonable expectations." In general, "the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Syl pt. 1, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987). If an agent creates a reasonable expectation of insurance coverage, "then both the insurance company and the [agent] would be bound." *Keller v. First Nat'l Bank*, 184 W.Va. 681, 685 (1991). The doctrine is generally limited to specific conduct by an agent during the application or administration process which creates some reasonable expectation of insurance coverage. *See Costello v. Costello,* 195 W.Va. 349, 353 (1995)(The West Virginia Supreme Court of Appeals found that an insurance agent's conduct during the application process may have created a reasonable expectation of insurance coverage because the agent told a husband and wife they were both covered by the insurance policy when in fact only the husband was covered).

Here, however, Plaintiffs do not allege Richmond did some affirmative act which created a reasonable expectation that the Policy covered the Property after it was transferred to Ms. Lansing. "[A]bsent special circumstances, an insurer or its agent has no duty to advise an insured as to the insured's insurance coverage needs." *Hill*, 261 F. Supp. 2d at 548. (citations omitted).   Special circumstances to advise an insured on coverage issues may exist if "(1) a special relationship exists between the insured and the agent, (2) the agent holds itself out as a specialist in the particular field, or (3) the agent misrepresents the scope or nature of the insured's coverage." (*Id.*)   Although Plaintiffs now argue that Richmond had a duty to Mr. Brewer because he was a longtime customer and Richmond had to believe Mr. Brewer would reasonably rely upon its expertise, no such facts are alleged in their Complaint.

Viewing the facts alleged in the light most favorable to the Plaintiff and resolving all questions of law in their favor, the Court finds Defendants demonstrated that there is no possibility or even a "glimmer of hope" that Plaintiffs would be able to establish a cause of action against Richmond.   The Court finds Richmond was fraudulently joined as a defendant in this action and its citizenship shall be ignored for jurisdiction purposes.   Allstate has sufficiently carried its burden to demonstrate that jurisdiction exists inasmuch as the remaining parties (Allstate and Plaintiffs) are completely diverse and there is no dispute that the amount in controversy exceeds $75,000. Therefore, Plaintiffs motion to remand should be denied.

### C.  Motion to Dismiss

As noted *supra*, the fraudulent joinder standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Mayes,* 198 F.3d at 464. The Court, likewise, finds Plaintiffs failed to state a claim upon which relief can be granted

against Richmond for the reasons set out in the discussion above. Accordingly, Richmond's motion to dismiss should be granted.

### CONCLUSION

WHEREFORE, as discussed herein, the Court does hereby **ORDER** that *Plaintiffs' Motion to Remand Pursuant to 28 U.S.C. § 1447* (Document 12) be **DENIED**.   The Court further **ORDERS** that the *Motion to Dismiss Richmond Insurance Center, Inc* (Document 3) be **GRANTED** and that Plaintiff's Complaint be **DISMISSED** as to Richmond Insurance Center, Inc.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:      May 2, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA